## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

STEPHEN VAIL and LASHELLE VAIL,   )
                                    )
       Plaintiffs,          )
                                      )
v.                                 )      Case No. 23-cv-00297-JDR-SH
                                      )
HYUNDAI MOTOR AMERICA,      )
                                      )
       Defendant.         )

### OPINION AND ORDER

Before the Court is the motion of Hyundai Motor America ("Hyundai"), asking that Plaintiffs' lawsuit be dismissed as a sanction for spoliating evidence. Absent bad faith, Hyundai is not entitled to such an extreme sanction. In any event, Hyundai has failed to show that any relevant evidence has been destroyed or that it has been prejudiced; that any damage was the result of Plaintiffs' decision to leave the vehicle with a Hyundai-branded dealership; or that Plaintiffs have acted in any way negligently or in an otherwise culpable manner. Hyundai's motion will be denied.[1]

### BACKGROUND

Plaintiffs Stephen and Lashelle Vail brought this lawsuit in October 2022, asserting various claims relating to a 2020 Hyundai Kona vehicle and its purported defects. (ECF No. 2-1.)

---

[1] Because a magistrate judge's authority is determined by the penalty imposed, rather than the penalty sought, Hyundai's motion will be denied by an order rather than a report and recommendation to District Judge John D. Russell. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b).").

Plaintiffs purchased the vehicle new in May 2020 and state they subsequently experienced problems on long highway drives, where the vehicle would suddenly start jerking and bogging down or lunging; where warning lights would go off; or where the vehicle would suddenly lose power and go from 70 to 50 mph.  (ECF No. 76-1 at 1 ¶¶ 2-3 & at 3 ¶¶ 2-3.[2])  Plaintiffs claim they returned the vehicle to a dealership three times for repairs to no avail (*id.* at 1 ¶ 4 & 3 ¶ 3), and Hyundai has submitted repair orders showing the vehicle was at a Hyundai-branded dealership in Broken Arrow, Oklahoma, for multiple months between August 2020 and April 2021 (ECF No. 65-2).

During a trip to Kansas City, Missouri, in May 2021, Stephen Vail claims the vehicle bogged down and would only go 10-15 mph when pulling onto a busy highway; suddenly died at a highway intersection and flashed a message that no key was detected; and then again bogged down and lost power.  (ECF No. 76-1 a 3 ¶ 4.)  When Stephen called Hyundai customer service, Hyundai had the vehicle towed to a Hyundai-branded dealership in Kansas City.  (*Id.* at 3 ¶ 5.)  Hyundai does not own such dealerships (ECF No. 82-2 at 84:24), but it has an agreement with them to perform service relating to warranties (ECF No. 76-1 at 14 (lines 82:19-21)).  Hyundai requires that warranty repairs be conducted at these Hyundai-branded dealerships.  (*Id.* at 10 (lines 78:18-79:3); *id.* at 15 (lines 85:9-16); *id.* at 22.)

The Kansas City dealership, however, was unable to duplicate Plaintiffs' concerns.  (ECF No. 65-3.)  The dealership found the vehicle operated to Hyundai specifications and, therefore, performed no work on the vehicle.  (*Id.*)  It appears the dealership only drove

---

[2] Citations to page numbers refer to the page number in the court-provided header, with the exception of depositions, where the Court uses the page:line numbering from the deposition itself.

the vehicle for 11 miles before making this determination.  (ECF No. 76-1 at 4 ¶ 6 & at 20 (lines 176:11-16).)  The Vails claim they continued to ask Hyundai and the dealership to repair the vehicle but that they were unwilling to drive it again for fear of injury or death.  (*Id.* at 2 ¶¶ 6-7 & at 4 ¶¶ 7-8; ECF No. 82-1 at 145:24-146:10.)  The Vails told the dealership they wanted the vehicle fixed, and they did not want it back.  (ECF No. 82-1 at 146:6-10.[3])

Hyundai has provided no evidence relating to the dealership's communications with Plaintiffs after this point.  There is no evidence that the dealership told Plaintiffs it was considering the vehicle abandoned or that it intended to dispose of or otherwise treat the vehicle any differently than it had while repair was pending.  Instead, the only evidence provided indicates that the dealership at some point told the Vails their vehicle was placed at an off-site storage area; that Lashelle talked to the dealership a couple of times about whether any recall-related repairs had been completed;[4] that Lashelle once talked to the dealership about the storage costs, which were $1,000 at one time; and that Plaintiffs have not paid any storage fees to the dealership, and it has not threatened them with collections.  (ECF No. 82-1 at 171:3-172:7; ECF No. 82-3 at 227:18-23.)  The parties appear to agree that Plaintiffs have continued to make payments on and to insure the vehicle.  (ECF No. 65 at 2; ECF No. 64 at 13:22-25.)

---

[3] This testimony is ambiguous.  It is not clear whether Stephen Vail is saying they told the dealership they wanted the vehicle fixed, and (separately) that they knew they did not want the vehicle back, or, whether they told the dealership both that they wanted the vehicle fixed <u>and</u> that they did not want the vehicle back.  Resolving this ambiguity is unnecessary here, as it does not alter the result.

[4] Lashelle avers that she asked the Hyundai dealership to do the recall-related repairs, but it did not so do.  (ECF No. 76-1 at 2 ¶ 9.)  It is unclear why the dealership did not perform the recall-related repairs or whether it believes it had no pending repair orders.

By August 2022, Plaintiffs were represented by their current counsel and participated in what appears to be non-binding arbitration with Hyundai. (ECF No. 65-4.) Plaintiffs' claim was denied on October 10, 2022 (*see id.* at 2-4), and Plaintiffs immediately filed suit (ECF No. 2-1). By November 2022, Plaintiffs had commenced discovery in the case (*see, e.g.*, ECF No. 13-1 at 19), which was later removed to this Court (ECF No. 2).

After removal, in September 2023, the parties appeared before the Court on Hyundai's motion to reconsider a state-court discovery ruling. At the hearing, the undersigned asked whether the vehicle still existed, and Hyundai's counsel stated that it was still at the Kansas City dealership; it had not been tested as part of the litigation; and "there were some discussions early on in an effort to resolve the matter and the dealership checked to see if the car would still turn on and start and it does." (ECF No. 64 at 9:16-10:2.)

Then, in December 2023, Hyundai filed an unopposed motion for protective order for the vehicle. (ECF No. 37.) In the motion, Hyundai represented that the vehicle was still at the Kansas City dealership, but indicated it had "learned that Plaintiffs may intend to re-take possession of the vehicle and have the vehicle moved." (*Id.* ¶ 2.) Hyundai requested that Plaintiffs "enter into a stipulated protective order for the preservation of the Subject Vehicle for use in this litigation." (*Id.* ¶ 4.) The Court entered the requested protective order on January 2, 2024, which provided that (1) the vehicle shall be preserved by Plaintiffs, their counsel, and "whoever Plaintiffs may entrust it to"; (2) Hyundai would have reasonable access to the vehicle for purposes of inspecting it upon reasonable notice to Plaintiffs; (3) any testing, alteration, disassembly, or modifications of the vehicle would occur upon agreement of all parties and with

reasonable notice, or by leave of court; and (4) the results of any testing would be shared within eight days.  (ECF No. 38.)

As required by the protective order, the parties then began negotiating a protocol for a long-distance test drive of the vehicle.  This protocol became the subject of an earlier motion and hearing on February 27, 2024.  (*See* ECF Nos. 43, 45, 47, 52.)  The protocol recognized the "extensive time [the] vehicle has been parked" and separately allowed for replacing the battery, if necessary, but no other alterations or repairs.  (ECF No. 43-3 at 1.)  At the hearing, Hyundai announced it also wanted to remove the spark plug and engine coil to put a camera in the engine, and Plaintiffs agreed, so long as everything was documented with photographs.  (*See, e.g.*, ECF No. 52 and audio of hearing.)

The inspection was subsequently scheduled for March 5 and 6, 2024.  (ECF No. 65-5.)  Hyundai's expert performed an inspection at the "dealership storage lot on March 5[,] 2024 with [Hyundai] local counsel present."  (ECF No. 65-6 at 2.)  Photographs from the inspection show the vehicle parked with numerous other vehicles in a fenced, outdoor lot adjacent to some buildings.  (*Id.* at 3-6, 12.)  The inspection found vines growing along and into the body of the vehicle (*id.* at 7-10) and an unremarkable interior of the vehicle (*id.* at 14-20).  When the hood was opened, a "large raccoon" was nested between the battery and engine and was photographed escaping the vehicle.  (*Id.* at 22-23.)  The inspection showed the hood liner was destroyed and the underhood area covered in debris.  (*Id.* at 23-29.)  As anticipated by the protocol, the battery was fully discharged.  (*Id.* at 30.)  The only damage noted to functional parts of the vehicle was a damaged fuel line.  (*Id.* at 31.)  The expert "advise[d] the debris needs to be cleaned from underneath the hood and a thorough inspection performed to identify any damage to wiring, hoses or other components," and the "[d]amaged fuel must be replaced before attempting to start

vehicle engine." (*Id.*)  The inspection did not proceed any further.  (*Id.*)  No inspection has been performed to determine whether anything other than the fuel line has been damaged.   No information has been provided regarding the effect of the fuel-line replacement on the viability of any expert analysis performed on the vehicle.

### The Motion

A month after the aborted inspection (and two days before the discovery cutoff), Hyundai brought the current motion.  (ECF No. 65.)  Hyundai argues Plaintiffs' claims should be dismissed as a sanction for spoliation of evidence.

### Analysis

### I.      Standard of Review

Spoliation, generally, "includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *United States v. Koch Indus., Inc.*, 197 F.R.D. 463, 482 (N.D. Okla. 1998).  "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).  In determining the appropriate sanction, some courts look to factors that include (1) the degree of actual prejudice to the movant; (2) the amount of interference with the judicial process; and (3) the culpability of the party that lost the evidence.  *Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, No. 10-CV-02103-PAB-KLM, 2017 WL 3334648, at *5 (D. Colo. Aug. 4, 2017).

"The entry of default judgment or the imposition of adverse inferences require a showing of bad faith.  'Mere negligence in losing or destroying' evidence is not enough to support imposition of either of these harsh sanctions.'" *Jones v. Norton*, 809 F.3d 564,

580 (10th Cir. 2015) (quoting *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009)).  *See also Turner*, 563 F.3d at 1149 (noting that, without bad faith, a district court may only impose sanctions that are "lesser" than an adverse inference); *Pepe v. Casa Blanca Inn & Suites LLC*, No. 18-CV-476-NDF-KHR, 2020 WL 5219391, at *2 (D.N.M. Apr. 10, 2020) ("For dispositive-like sanctions such as dismissal . . . there must be evidence of intentional destruction or bad faith on the part of the spoliator.").

As the moving party, it is Hyundai's burden to show that sanctions are appropriate. *Ward v. Nesibo*, No. 4:22-CV-00054-DN-PK, 2023 WL 8261670, at *1 (D. Utah Nov. 29, 2023); *see also Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) ("A moving party has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it."); *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR, 2012 WL 2370110, at *1 (D. Kan. June 21, 2012) ("The party moving for sanctions has the burden to demonstrate spoliation by a preponderance of the evidence.").

## II.    Bad Faith

Hyundai does not assert Plaintiffs acted in bad faith, and the Court may deny Hyundai's motion for dismissal sanctions on this basis alone.[5]  *See Jones*, 809 F.3d at 580; *Turner*, 563 F.3d at 1149.

Hyundai argues the Court should ignore published Tenth Circuit precedent and instead rely on an unpublished Tenth Circuit decision that upheld a dismissal sanction where no bad faith was shown.  (ECF No. 65 at 6 (citing *Jordan F. Miller Corp. v. Mid-*

---

[5] Dismissal is the only sanction sought by Hyundai.  The Court has "no obligation to impose a sanction not sought by a party."  *Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 n.4 (10th Cir. 2017).

*Continent Aircraft Serv., Inc.*, 139 F.3d 912 (table), 1998 WL 68879 (10th Cir. Feb. 20, 1998) (unpublished) (underlying district court had dismissed plaintiff's damages claims as a spoliation sanction)).)  Hyundai argues the Court can ignore the statement of law in *Jones* because the facts in that case did not involve "destruction of the *very subject of the lawsuit* . . . ."  (ECF No. 82 at 7.)  The Court disagrees.

As a preliminary matter, the Tenth Circuit has made it clear that unpublished decisions are not precedential, even though they may be cited for their persuasive value.[6] 10th Cir. R. 32.1(A).  A panel of the Tenth Circuit "can not overrule established Tenth Circuit precedent" absent en banc consideration or a superseding decision by the Supreme Court.  *United States v. Morris*, 247 F.3d 1080, 1085 (10th Cir. 2001).  The undersigned has no greater power.

In any event, the Court does not find *Jordan F. Miller* to be persuasive.  In *Jordan F. Miller*, the panel correctly noted binding Tenth Circuit precedent that, "because only the bad faith loss or destruction of a document will 'support an inference of consciousness of a weak case,' no adverse inference should arise from spoliation that is merely negligent."  1998 WL 68879 at *4 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).  Numerous other decisions by the Tenth Circuit in other contexts have found dismissal to be a sanction of last resort, applicable only in extreme circumstances. *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.6 (10th Cir. 1988) (abrogated on other grounds) (reversing dismissal for failure to file timely response to motion to dismiss); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (noting, in context of Rule 37

---

[6] The panel deciding *Jordan F. Miller* noted this as well.  "This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel."  1998 WL 68879 at *1 n.*.

sanctions, "that dismissal represents an extreme sanction appropriate only in cases of willful misconduct").  It is difficult to see why courts would impose a "bad faith" gatekeeping requirement for an adverse inference that <u>might</u> result in an adverse judgment against the offending party, but not impose such a gatekeeping requirement for a dismissal or default that is <u>sure</u> to result in a such an adverse judgment.[7]

For this reason, the Court finds that a dismissal sanction would not be appropriate in a case where no bad faith has been alleged or shown.

## III.   Spoliation

In any event, Hyundai has failed to show that sanctionable spoliation has occurred. As noted above, spoliation is the (intentional or negligent) destruction or loss of tangible and relevant evidence that impairs a party's ability to prove or defend a claim.  Here, there is insufficient evidence to show that (1) Plaintiffs acted with negligence; or (2) Plaintiffs' actions resulted in the destruction or loss of relevant evidence.  Relatedly, Hyundai has failed to show prejudice from any lost evidence.

As for negligence, the only evidence presented is that—before the parties anticipated litigation—Plaintiffs called Hyundai; Hyundai towed their vehicle to an approved dealership; and Plaintiffs never removed their vehicle from the control of the dealership.  There is no evidence that Plaintiffs had any reason to believe the dealership

---

[7] This approach is further supported by the way the federal rules treat spoliation of electronically stored information in Rule 37.  Under that rule, the Court may impose the sanction of adverse inference, dismissal, or default judgment only upon finding that the party acted with intent to deprive the other party of the information's use.  Fed. R. Civ. P. 37(e)(2).  The Tenth Circuit has looked to this rule and the "commonsense explanation" provided by the Advisory Committee in deciding the requirements for adverse-inference sanctions in another context.  *JetStream*, 878 F.3d at 965-66 (sanction for failure to preserve records under 29 C.F.R. § 1602.14).  The Court similarly finds it significant that the federal rules treat dismissal, default judgment, and adverse inferences as equally severe enough to require an ill intent.

would treat their vehicle any differently than it treats the many other Hyundai vehicles entrusted to its care.[8]  There is some evidence that the dealership believed it was storing the vehicle for the Vails and had even discussed the cost of that storage with them (although no monies were ever paid).  There is also evidence that Hyundai was exercising some control over the vehicle at the dealership—at least, its counsel was in contact with the dealership and able to state that the dealership had checked to see if the car would still turn on sometime before September 2023.  And, from court filings, it appears Hyundai's primary concern before the inspection was that Plaintiffs might <u>remove</u> the vehicle from the dealership, not leave it there.

Further, Hyundai has not shown that the damage that occurred is due to Plaintiffs' actions in leaving the car with the dealership, as opposed to a risk that would be inherent in any attempt to store the vehicle for the past three years.  Hyundai makes no effort to explain how the dealership's storage of the vehicle at its outdoor lot is so different from other long-term vehicle storage areas that Plaintiffs were culpable for their decision to leave the vehicle in the Hyundai-branded dealership's care.  Moreover, Hyundai does not explain how the fuel line was damaged or, assuming the racoon caused the damage, how that damage is a result of Plaintiffs' action (or inaction), rather than an act of nature that could have occurred at other storage facilities.

As for destruction of evidence, Hyundai has not shown what relevant evidence, if any, has been destroyed.  The only information presented by Hyundai is that a fuel line is damaged.  Hyundai has not provided evidence showing that a fuel line could in any way

---

[8] Having knowingly come into possession of the vehicle and exercised physical control over it, the dealership likely had the duties and obligations of a bailee with respect to the vehicle.  *Stone v. Crown Diversified Indus. Corp.*, 9 S.W.3d 659, 669 (Mo. Ct. App. 1999).  This includes a duty to exercise ordinary care in dealing with the bailed property.  *Id.*

be implicated as a potential root cause for the alleged problems with the vehicle.  Nor has Hyundai shown that there is any other non-cosmetic damage to the vehicle or why repairing that damage would harm the validity of its expert's opinions.

Finally, this case bears no resemblance to the cases cited by Hyundai where a vehicle is destroyed "before the defendant is given an opportunity to inspect" it.  (ECF No. 65 at 9.)  The parties began arbitration in August 2022, began this litigation in October 2022, and began discovery in November 2022.  During that time and to present, all parties have been aware of the location of the vehicle.  Hyundai has presented nothing showing that it was denied any access to the vehicle or any opportunity to test it over these past 18 months.[9]  This is a far cry from the cases Hyundai cites, where vehicles were traded in or sold without informing the defendant.  *See, e.g.*, *Goodwin v. Nissan N. Am., Inc.*, No. 3:11-CV-00306, 2012 WL 2237110, at *5 (M.D. Tenn. June 15, 2012) (excluding testimony from plaintiff's expert regarding his inspection of vehicle when plaintiff traded in car without notice to defendant, depriving its expert of a similar opportunity to inspect); *O'Connor v. Ford Motor Co.*, No. 19 C 5045, 2023 WL 4665642, at *4 (N.D. Ill. July 20, 2023) (dismissing case where plaintiff traded in vehicle without notice to defendant); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 585-86 (4th Cir. 2001) (affirming dismissal where plaintiff's expert inspected vehicle but failed to give defendant notice of his claim or an opportunity to inspect the vehicle before it was sold by its owner and later repaired in a way that destroyed the relevant evidence).  Here, Hyundai has had ample opportunity

---

[9] There was some small delay relating to the parties' inability to agree—as required by Hyundai's own protective order—to the full protocol for the test drive in February 2024. The Court ruled against Hyundai on this dispute, and there is no indication that the delay caused any evidence to be lost.

to inspect the vehicle and had exactly the same notice as Plaintiffs regarding any "risk" associated with its storage at the dealership.

IT IS THEREFORE ORDERED that *Defendant Hyundai Motor America's Motion for Sanctions for Spoliation of Evidence* (ECF No. 65) is DENIED.

ORDERED this 8th day of May, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT